IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA


SCOTT THORNTON,                        )
                                       )
              Petitioner,              )
                                       )
                                       )        CIV-12-221-M
v.                                     )
                                       )
JUSTIN JONES, Director,                )
                                       )
              Respondent.              )


REPORT  AND  RECOMMENDATION

        Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging the convictions for Burglary

in the First Degree (two counts), Robbery with Imitation Firearm, Kidnaping for the Purpose

of Extortion, Assault and Battery with a Dangerous Weapon, Kidnaping (two counts), and

Attempted Unauthorized Use of Credit Card, all after former conviction of two or more

felonies, entered in the District Court of Oklahoma County, Case No.  CF-2006-7532.

Respondent has responded to the Petition and filed the relevant state court records. The matter

has been referred to the undersigned Magistrate Judge for initial proceedings consistent with

28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that the Petition be

denied.

1

I. <u>State Trial Proceedings</u>

Petitioner was charged in Oklahoma County District Court with the offenses of Burglary in the First Degree (count one), Robbery with Imitation Firearm (count two), Kidnaping for the Purpose of Extortion (count three), Assault and Battery with a Dangerous Weapon (count four), Burglary in the First Degree (count five), Kidnaping (count six), Kidnaping (count seven), and Attempted Unauthorized Use of Credit Card (count eight), all after former conviction of thirteen felonies, in Case No. CF-2006-7532.  Original Record, Volume I, at 70-73 (Amended Information); Original Record, Volume III, at 399-400 (Amended Information Page 2).

Counsel was appointed to represent Petitioner in the criminal proceeding.  On March 21, 2007, Petitioner filed three *pro se* motions: a Motion to Disqualify Public Defenders, a Motion for Mental Evaluation, and a Motion to Proceed as Own Counsel and Entry of Appearance. Response, Ex. 19.  In May 2007, a hearing was conducted on these motions before Oklahoma County Judge Paddleford, and Petitioner's Motion to Proceed as Own Counsel was sustained.  Judge Paddleford noted on the court minute order filed in the case that Petitioner "wishes to be pro se [and] get conflict counsel appointed as stand by." <u>Id.</u> Judge Paddleford appointed Mr. Anderson as standby counsel for Petitioner. <u>Id.</u>  In June 2007, a status conference was conducted.  In a court minute order, Judge Paddleford noted  that Petitioner had previously requested but did not want a competency evaluation. Original Record, Volume I, at 39.

In October 2007, a preliminary hearing was conducted in the case.  At the hearing,

Petitioner appeared *pro se* and with his standby counsel, Mr. Anderson. Response, Ex. 18 (Transcript of Preliminary Hearing Proceedings had on the 17th Day of October, 2007, before the Honorable D. Fred Doak, Special Judge)("Preliminary Hearing Transcript").   At the beginning of the hearing, Judge Doak advised Petitioner that he had the right to represent himself in the criminal case but cautioned Petitioner concerning the consequences of any decision to proceed *pro se*. Id. at 19-23.  Judge Doak specifically advised Petitioner that he would be "held to the same standard of procedure as this trained lawyer who is sitting at the table opposite you.  I cannot give you advice as to law.  I cannot give you assistance in the handling of your case.  Once we convene this hearing, you will be on your own." Id. at 21. Petitioner stated that he understood the consequences of proceeding without counsel. Id. at 21-22.  Mr. Anderson also cautioned Petitioner that, as standby counsel, he could advise Petitioner concerning court procedures but that he could not advise Petitioner as to what defenses or strategies to pursue, could not cross-examine witnesses, and could not present evidence. Id. at 22. After receiving this advice, Petitioner elected to proceed *pro se*. Id. at 23.

At the preliminary hearing, the evidence showed that on November 27, 2006, Petitioner broke into the residence of Ms. Mitchell.  Ms. Mitchell testified that Petitioner was wearing a hat, sunglasses, and gloves, and holding a handgun when he accosted Ms. Mitchell in her upstairs bathroom.  Petitioner pointed the gun at her, told her to be quiet, and asked if other people were in the residence.  When Ms. Mitchell responded that they were alone, Petitioner grabbed Ms. Mitchell by her neck, put the gun to the side of her head, and led her downstairs where he demanded money.  Ms. Mitchell testified that Petitioner had already taken about $40

3

from her billfold, which she kept in her purse in the laundry room adjacent to her garage. Petitioner then demanded that she get more money and hit Ms. Mitchell on the side of her head with the gun.  He forced Ms. Mitchell at gunpoint to drive them to her bank, make out a check for $700 in cash, hand the check to a bank teller, and give him the cash.  He then directed Ms. Mitchell to drive to a Home Depot store where he forced her to enter the store with him and push a shopping cart through the store.  Ms. Mitchell testified that Petitioner kept his gun hidden while they were inside the store, that Petitioner had her Home Depot credit card and billfold, and that Petitioner loaded the shopping cart with items from the store. When they got to a self-checkout area, Ms. Mitchell testified that she ran away from him and screamed.  She was then escorted to an office inside the store by a sales associate.

Another witness testified that he was inside the Home Depot store when he saw Petitioner and a woman enter the Home Depot store.  He testified that Petitioner had on a cap and sunglasses and that Petitioner had a hand on the woman's neck.  The witness testified he heard a woman yelling that Petitioner had a gun and the witness then saw Petitioner with a handgun.  Petitioner pointed the gun at the witness but then ran out of the front door of the store and headed east across the parking lot.  Petitioner then crawled over a fence at about the time that law enforcement officers arrived.

A third witness, Mr. Sinder, testified that on November 27, 2006, Petitioner gained entry into his residence through an unlocked back door and that his residence was located across the street from the Home Depot store.  Petitioner threatened to kill him and told Mr. Sinder he was running from law enforcement.  Mr. Sinder testified that Petitioner forced Mr.

Sinder to go around the residence with him while Petitioner locked the doors.  Petitioner then forced Mr. Sinder and his roommate, Mr. Bruce, to remain in the residence for 2 to 2 ½ hours and that during this time period Petitioner attempted to change his appearance by shaving his mustache and putting on a shirt owned by Mr. Bruce.  Mr. Sinder got his cellphone while Petitioner was in a bathroom and sent a text message to an individual that he was being held hostage.  Police officers arrived shortly thereafter.

Mr. Sinder's roommate at that time, Mr. Bruce, testified that he came out of his bedroom and saw Mr. Sinder sitting in the living room across from Petitioner and looking scared.  Mr. Bruce testified that Petitioner then grabbed him by the shoulder and forced him onto a couch in the residence and that Petitioner remained at the residence with Mr. Sinder and Mr. Bruce for about two hours.  Both Mr. Sinder and Mr. Bruce testified that during this time period Petitioner called an individual he identified as an ATF agent on Mr. Bruce's cellphone.  Mr. Bruce testified he overheard Petitioner tell the agent that he was in a lot of trouble, had "messed up real bad and that he had done something with a lady earlier that morning" and needed help. Preliminary Hearing Transcript, at 117.  Both Mr. Bruce and Mr. Sinder testified that while Petitioner was holding them hostage they watched a newscast in which the newscaster described a robbery of a woman at the Home Depot store close to their residence.  Petitioner subsequently surrendered to police, and Mr. Sinder and Mr. Bruce were released.

A police detective testified that he interviewed Petitioner following his arrest.  During this interview, Petitioner admitted that he had a garage door opener he had retained after he

moved out of the residence occupied by Ms. Mitchell and that he used the garage door opener to gain entry into Ms. Mitchell's residence and rob her. Preliminary Hearing Transcript, at 140-141.  Petitioner admitted robbing Ms. Mitchell, forcing her to take him to her bank to retrieve money, and forcing her to drive him to Home Depot. Id. at 141-142. Petitioner stated that the gun he used during the robbery was not real and that he had tossed the gun into a creek while fleeing the Home Depot store.  Id.  at 143-144.  Police officers recovered a realistic-appearing toy pistol from the spot where Petitioner took them.  Id. at 144. Petitioner admitted he had items in his car, including rope and tape, that he was going to use if he "needed to tie someone up." Id. at 141, 147.  Petitioner admitted he gained entry to Mr. Sinder's and Mr. Bruce's residence through an open back door. Id. at 146.  Petitioner admitted he held the individuals inside the residence because he "needed time to think" and was "on the run from the police." Id. at 147.   The detective testified that Petitioner "was upset that he had done this" but did not appear mentally incompetent at the time. Id. at 148. At the conclusion of the preliminary hearing, the court found probable cause existed to support each of the eight charges, and Petitioner was bound over for trial.

Petitioner filed numerous *pro se* motions following the preliminary hearing, including a motion for a hearing to address the defense of insanity, an application for funds for an expert witness related to a sanity defense, a request for a "Sanity Hearing and Suspension of Trial Proceedings," "Motion for Mental Evaluation," a motion for appointment of an investigator, motions seeking discovery,  and a motion to suppress. Original Record, Volume I, at 80, 82, 84-85, 86, 87-91.  In May 2008, Petitioner's request for a mental evaluation and request for

appointment of an expert to assist with an insanity defense were granted. Original Record, Volume I, at 132.

In May 2009, Petitioner's motion to discharge Mr. Anderson as his standby counsel was granted. Original Record, Volume II, at 256. Petitioner continued to file motions and appealed certain district court rulings to the Oklahoma Court of Criminal Appeals.   At a hearing conducted on August 10, 2009, Petitioner requested that he be evaluated by a psychiatrist to assist him in his defense, and the court ordered that a psychiatric evaluation of Plaintiff be conducted. Transcript of Proceedings had on the 10th day of August, 2009, before the Honorable Kenneth C. Watson. A second standby counsel, Mr. Trevino, was appointed. Original Record, Volume II, at 267.

In December 2009, Petitioner filed a "Motion for Substitute Counsel or Alternatively Notice of Intent to Proceed Pro Se." Original Record, Volume II, at 283-288.   In January 2010, Petitioner filed a motion seeking the recusal of the presiding district judge, Judge Watson. Original Record, Volume II, at 308-316.  Judge Watson subsequently transferred the case to Judge Gray. Original Record, Volume II, at 321.

Because Petitioner's "first two conflict attorneys" were named as defendants in a pending civil action filed by Petitioner, Judge Gray conducted a status conference in January 2010 and appointed a third standby counsel, Mr. Gingrich, to assist Petitioner. Original Record, Volume II, at 322-323.

During this status conference, Judge Gray noted in her Order that in granting Petitioner's request she had

> strongly urged Defendant to allow counsel to represent him. Defendant is intelligent, has his GED, and has previously had a jury trial in one of his cases. He is articulate, appears to have a good grasp of his options and was well organized. He also understands the range of punishment includes multiple life sentences in his eight count case, and that several counts are 85% crimes. Defendant has been to prison several times, understands that he is at a serious disadvantage in proceeding *pro se*, but makes a knowing and voluntary decision to continue to represent himself against the advice of the Court.

Original Record, Volume II, at 322.

Petitioner continued to file various motions in the case, including a motion seeking an "Ake-certified expert." Original Record, Volume II, at 324-329. Petitioner filed a motion seeking the recusal of Judge Gray in April 2010 and a second motion to disqualify Judge Gray in June 2010. Original Record, Volume II, at 352-356; Original Record, Volume III, at 403-406. The criminal case was reassigned to another district judge, Judge Bass, in June 2010. Original Record, Volume III, at 419.

On June 10, 2010, Petitioner appeared in open court with his standby counsel and entered a plea of guilty to all eight counts. Original Record, Volume III, at 420-425 (Plea of Guilty and Summary of Facts); Transcript of Proceedings had on the 10th Day of June, 2010, before the Honorable Jerry D. Bass District Judge ("Plea Transcript"). The Summary of Facts submitted to the court by Petitioner memorialized Petitioner's understanding of the charges against him, Petitioner's understanding of the rights he was waiving, the range of punishment for the offenses, and the terms of the plea agreement. Response. Ex. 1; Original Record, Volume III, at 442-447. The plea agreement called for 30-year terms of imprisonment for

8

each offense, to run concurrently with each other, and included a provision that the State would make a reasonable effort to facilitate that Petitioner serve his sentences out-of-state and that the State would write and send a letter to the Oklahoma Department of Corrections ("ODOC") making this request. Original Record, Volume III, at 444.  The plea agreement also provided that Petitioner's sentences would run concurrently with his sentences in five other criminal cases from Oklahoma County, Canadian County, and Comanche County. Id.

During the plea proceeding, Petitioner was advised of the charges against him and the range of punishment for those offenses. Plea Transcript, at 4-5.  Petitioner described the plea agreement. Plea Transcript, at 8-10.  Petitioner affirmed to the court that he had written the factual basis for the plea that appeared on the Summary of Facts and that he had discussed the statement with his stand-by counsel. Plea Transcript, at 10.  Petitioner affirmed to the court that he was pleading guilty voluntarily and without promises, threats, or coercion. Plea Transcript, at 10-11.   The Summary of Facts includes Petitioner's statement of the facts on which his plea was based and Petitioner's statements expressing the voluntariness of the plea and his competency to enter the plea.

With his signature on the Summary of Facts, Petitioner attested that his stand-by counsel had completed the form, that he and counsel had reviewed the form, and that the answers on the form were true and correct.  In responding to questions on the Summary of Facts asking whether or not the defendant had discussed the charges with counsel and been advised concerning defenses, Petitioner stated he was appearing pro se. Response, Ex. 1, at 3; Original Record, Volume III, at 422.  Judge Bass accepted the plea, found that Petitioner

was competent to enter the plea, found that the plea was knowingly and voluntarily entered, and sentenced Petitioner consistent with the terms of the plea agreement. Original Record, Volume III, at 425-429; Plea Transcript, at 12-13.

Seven days later, Petitioner filed an application for post-conviction relief and motion to withdraw the plea. Original Record, Volume III, at 435-438.  In his motion, Petitioner asserted that he should be allowed to withdraw the plea because he was denied a speedy trial, there was no factual basis to support the convictions for the charges in counts one, two, five, six, and seven, his plea was not voluntarily entered because he was in an "acute state of depression" at the time he entered the plea, he was coerced to enter the plea because of a "fear of imminent death or serious bodily injury," and the plea was made based on false promises by the prosecutor. Id.

In a hearing conducted on June 29, 2010, Petitioner appeared in court with a new standby attorney, Mr. McLawhorn.  Petitioner asserted only one ground during the hearing, that his right to a speedy trial was denied. Transcript of Proceedings had on the 29th Day of June, 2010 before the Honorable Jerry D. Bass District Judge ("Motion to Withdraw Transcript").  The motion was denied, and Petitioner was advised of his right to appeal. Original Record, Volume III, at 459-461; Motion to Withdraw Transcript, at 9-10.  The district court denied his alternative post-conviction application. Original Record, Volume III, at 479-483.

II. Appeal Proceedings

In his certiorari appeal[1], Petitioner asserted that his guilty plea was not valid because the district court did not establish an adequate factual basis for the plea. Response, Ex. 7.  In a summary opinion, the Oklahoma Court of Criminal Appeals ("OCCA") found that in light of the Summary of Facts, Petitioner's statements at the plea proceeding, and the fact that a preliminary hearing had been conducted, there was a sufficient factual basis for the plea in the record. Response, Ex. 8.  The OCCA denied the petition for a writ of certiorari and affirmed the convictions and sentences. Id.

III. State Post-Conviction Proceedings

In May 2011, Petitioner applied for post-conviction relief in the district court. Petitioner asserted that he had been denied the effective assistance of appellate counsel. Specifically, Petitioner asserted that his appellate counsel provided constitutionally ineffective assistance because (1) his appellate counsel did not assert that the plea was invalid due to the district court's failure to inform Petitioner of his right to counsel, failure to establish a waiver of his right to counsel on the record, and failure to advise Petitioner of the presumption of his innocence at the plea proceeding and (2) his appellate counsel failed to adequately argue the only claim presented in the certiorari appeal of an insufficient factual basis for the plea. Response, Ex. 10, at 3-6.

In a separate proposition, Petitioner asserted that the district court did not adequately advise Petitioner of the nature and consequences of his guilty plea because he was "not

[1]In Oklahoma, "all appeals taken from any conviction on a plea of guilty shall be taken by petition for writ of certiorari to the Court of Criminal Appeals." Okla. Stat. tit. 22, § 1051(A).

advised of his right to counsel prior to entering his plea, nor did the trial judge inform Petitioner that he was presumed innocent of the charges." Id., at 6-7. Petitioner asserted that the trial court did not make a "sufficient determination of voluntariness" of the plea and his plea was invalid because it was coerced due to the "coercive atmosphere in the courthouse" and because the prosecutor agreed to provide a letter requesting out-of-state confinement for Petitioner in return for his plea. Id., at 8. Finally, Petitioner asserted that his plea was invalid because it was premised on a promise made by the prosecutor that he would receive credit for time served from the date of his arrest and this part of the plea agreement was breached by the prosecution. Id. at 10-11.

The district court found that Petitioner's claims which could have been raised on appeal were barred under Oklahoma's procedural bar doctrine. Response, Ex. 12. The district court rejected Petitioner's claims of ineffective assistance of appellate counsel and breach of plea agreement by ODOC on their merits and denied the application. Response, Ex. 12. With respect to the sentence credit issue, the district court found that the plea agreement was not breached because "the credit for time [Petitioner] served in county jail was applied towards Petitioner's sentences in Oklahoma County Case No. CF-2000-5313." Response, Ex. 12, at 7.

On appeal, Petitioner raised the same issues as he asserted in the district court. Response, Ex. 13. Petitioner also asserted that his appellate counsel provided ineffective assistance by failing to assert that he was denied counsel at the plea and plea withdrawal hearings, failing to assert that the plea was not voluntary because it was coerced, and failing

to assert that the plea agreement was breached because he did not receive credit toward his sentence for pre-plea custody. Id. at 6, 8.

The OCCA found that all issues raised by Petitioner except his claim of ineffective assistance of appellate counsel were barred as a result of Petitioner's failure to raise the claims in his certiorari appeal.  Response, Ex. 14.  The OCCA found that Petitioner had not demonstrated ineffective assistance of appellate counsel.

Petitioner subsequently filed a petition for a writ of habeas corpus in the district court. Petitioner asserted that the trial court did not make a proper record of his waiver of his right to counsel at the guilty plea proceeding and Petitioner was denied counsel at his guilty plea and motion to withdraw proceedings. Response, Ex. 15.  The district court denied the petition. Response, Ex. 16.  Petitioner attempted to appeal this decision.  However, the OCCA found that Petitioner failed to comply with the appellate court's procedural rule requiring a litigant to file with the court a certified copy of the district court's decision.  On this basis, the OCCA declined to exercise jurisdiction over the matter and dismissed the attempted appeal. Response, Ex. 17.

Petitioner is in custody in a private correctional facility located in New Mexico under a contractual agreement with ODOC.

IV. Federal Habeas Petition

In his first ground for habeas relief, Petitioner asserts that he was denied his Sixth Amendment right to the effective assistance of appellate counsel.  Petitioner specifically asserts that his appellate counsel did not adequately present his claim that there was no

13

adequate factual basis for his guilty plea presented to the district court. Petitioner also alleges that he was denied effective assistance of appellate counsel because his appellate counsel failed to raise the grounds for relief he asserts in grounds two through six.

In his second ground for habeas relief, Petitioner asserts that the "trial court failed to advise Petitioner of the nature and consequences of his plea (e.g. right to counsel/waiver)." Petition, at 7. Petitioner specifically argues that he "was denied counsel at a 'critical stage' of the criminal proceedings (plea hearing) and the record is silent as to waiver." Petition, at 7a. Petitioner also asserts in ground two that the district court did not advise him of "his presumption of innocence." Id.

In ground three, Petitioner asserts that the district court did not make a "sufficient determination" of the voluntariness of his guilty plea and the plea was coerced by the prosecutor who "proffer[ed] a letter [to Petitioner agreeing to request] out-of-state confinement in exchange for his plea." Petition, at 9.

In ground four, Petitioner contends, as he does in ground two, that he was "denied counsel at his guilty plea proceeding and the record is silent as to waiver." Petition, at 11. In ground five, Petitioner contends that he was denied the assistance of counsel at the hearing on his motion to withdraw his plea "and the record is silent as to waiver." Petition, at 12a.

In ground six, Petitioner contends that his "plea agreement was breached" when he was not given sentence credit for time spent in jail because he "understood [the prosecutor's] promise of 'credit for time served' to apply to the 30 year sentence being imposed in CF-2006-7532." Petition, at 12b.

V. <u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court cannot grant habeas relief to a state prisoner on any claim resolved on its merits by a state court unless the (1) state court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state court's ruling was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).  The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." <u>Williams v. Taylor</u>, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. <u>Id.</u> at 405-406, 413.  A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner."  <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Williams</u>, 529 U.S. at 407. <u>See</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640-641 (2003).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." <u>Holland v. Jackson</u>,  542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted).  A state court's determination of a factual issue is presumed to be

correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

VI. Procedural Bar and Ineffective Assistance of Appellate Counsel

The OCCA found that Petitioner's claims presented in his post-conviction appeal were procedurally barred from review except his claim of ineffective assistance of appellate counsel. Petitioner has presented those same procedurally-defaulted claims in grounds two through six of the Petition.  "In order to bar federal review, a state procedural rule must be adequate to support the judgment and independent from federal law." Banks v. Workman, 692 F.3d 1133, 1145 (10th Cir. 2012).   The OCCA's procedural bar rule is both adequate to support its judgment and independent from federal law. Id. at 1145-1146. Consequently, the state court's application of its procedural bar rule also bars federal habeas review of the same claims asserted in grounds two through six of the Petition unless Petitioner shows cause for the procedural default and resulting prejudice.  See Wainwright v. Sykes, 433 U.S. 72, 82-84 (1977).

Petitioner contends, both as an independent claim and as cause for his procedural default, that he was denied effective assistance of appellate counsel.  Petitioner raised this claim in his post-conviction proceeding.  In the OCCA's decision in his appeal of the district court's denial of the post-conviction application, the OCCA rejected Petitioner's claim of ineffective assistance of appellate counsel without explanation.  Citing Cartwright v. State, 708 P.2d 592 (Okla. Crim. App. 1985),  the court stated only that "[f]ailure to raise each and every issue is not determinative of ineffective assistance of counsel and counsel is not

required to advance every cause of argument regardless of merit." Response, Ex. 14, at 3.

The Tenth Circuit Court of Appeals has concluded in a case involving a nearly identical resolution of an ineffective appellate counsel claim by the OCCA that "the state court's rejection of an appellate ineffectiveness claim on the basis of the legal premise invoked here is wrong as a matter of federal constitutional law." Wilson v. Oklahoma, 192 Fed.Appx. 755, 757 (10th Cir. Aug. 17, 2006)(unpublished order).  See also Vaughn v. Dinwiddie, 277 Fed.Appx. 820, 824 (10th Cir. 2008)(unpublished order)(where OCCA rejected appellant's claim of ineffective assistance of counsel based solely on the conclusion that "failure to raise each and every issue is not determinative of ineffective assistance of counsel and counsel is not required to advance every cause of argument regardless of merit," OCCA's analysis of the claim did not follow "controlling federal standards")(brackets omitted).

Under the AEDPA's deferential review standard, this Court must determine "whether the OCCA correctly identified the governing legal principle" and whether it "reasonably applied it to the facts" in Petitioner's case. Hooks v. Workman, 689 F.3d 1148, 1167 (10th Cir. 2012).  In resolving Petitioner's ineffective assistance claim, the OCCA reviewed the district court's findings and noted that the district court had applied "the proper standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2nd 674, 692-693 (1984), . . . ." Response, Ex. 14, at 2.  The OCCA did not, however, apply Strickland's controlling standard in resolving Petitioner's ineffective assistance of appellate counsel claim.

"The deferential AEDPA standards of review do not apply 'if the state court employed

17

the wrong legal standard in deciding the merits of the federal issue.'" Douglas v. Workman, 560 F.3d 1156, 1170 (10th Cir. 2009)(quoting Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003)).   Under the circumstances present here, "the state court's legal conclusions and resolution of mixed questions" should be reviewed *de novo*. Trammell v. McKune, 485 F.3d 546, 550 (10th Cir. 2007).

The Supreme Court's decision in Strickland, supra, provides the standard for evaluating Petitioner's claims of ineffective assistance of appellate counsel. Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003).   Under Strickland, counsel's assistance is constitutionally deficient if it fell below an objective standard of reasonableness and counsel's errors prejudiced the defense. Strickland, 466 U.S. at 687.  Judicial review of  an attorney's assistance is "highly deferential," and courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689.   The reasonableness of the challenged conduct is evaluated from counsel's perspective at the time of the alleged error. Id.  Prejudice, under the second prong, is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  "[T]here is no reason for a court deciding an ineffective assistance claim...to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

"[I]n analyzing an appellate ineffectiveness claim based upon the failure to raise an

issue on appeal, [courts] look at the merits of the omitted issue." <u>Cargle</u>, 317 F.3d at 1202

(internal quotations omitted).   If an omitted issue has no merit, "its omission will not

constitute deficient performance." <u>Id.</u> (footnote omitted). <u>See</u> <u>Hawkins v. Hannigan</u>, 185 F.3d

1146, 1152 (10th Cir. 1999)(if omitted issue is meritless, then counsel's failure to raise it on

appeal is not constitutionally ineffective assistance).

"Attorney error amounting to constitutionally ineffective assistance of counsel

constitutes 'cause' for a procedural default." <u>Hickman v. Spears</u>, 160 F.3d 1269, 1272 (10th

Cir. 1998).  "Because the same legal standards govern [a habeas] petitioner's underlying claim

of ineffective assistance of counsel and his closely related burden to show cause for his state

law procedural default, [the reviewing court] must determine whether [the] petitioner has

shown cause concurrently with the merits of his ineffective assistance of counsel claim." <u>Id.</u>

at 1273.

Petitioner first contends that his appellate counsel provided constitutionally deficient

assistance by failing to adequately argue the claim presented in Petitioner's certiorari appeal.

Petitioner's court-appointed appellate counsel asserted in the appeal that the plea was not

valid because the district court failed to establish an adequate factual basis for the plea.

Response, Ex. 7.  In the brief filed in the appeal, counsel asserted that the exchange between

Petitioner and the presiding judge at the plea proceeding[2] was not sufficient to provide a

_____

[2]During this exchange, the presiding judge asked Petitioner if he had written the statement
set forth in the Summary of Facts explaining the facts on which the plea was based.  Plea Transcript,
at 10.  Petitioner responded that "I wrote it and we went over it and he agreed with it, at least when
I was talking to him." <u>Id.</u>  When asked if the statement was true and whether the court could rely on
the statement, Petitioner responded affirmatively. <u>Id.</u> at 10-11.

record of the factual basis for the plea.  The OCCA rejected this claim and concluded that

> [a] detailed factual basis covering Thornton's eight counts was
> set forth on the Summary of Facts form.  Thornton stated at the
> plea hearing that he agreed with the factual basis set forth on the
> Summary of Facts form.  Thornton had a preliminary hearing in
> this matter.  There was a sufficient factual basis provided below
> and the district court did not abuse its discretion in denying
> Thornton's motion to withdraw his pleas.

Response, Ex. 8, at 2.

Petitioner has not demonstrated either deficient performance or prejudice with respect

to the issue raised by his appellate counsel in the certiorari appeal.  Petitioner argues in

support of this claim that his counsel should have provided references to certain testimony at

the preliminary hearing.  However, the OCCA considered the transcript of the preliminary

hearing in determining that a sufficient factual basis had been established for the plea.

Petitioner also argues that the factual basis set forth in the Summary of Facts was "inaccurate"

but he does not provide any support for this conclusory argument.  Petitioner has not

demonstrated that his appellate counsel provided constitutionally deficient assistance with

respect to the adequacy of the issue raised in the certiorari appeal or that the result of the

appeal would have been different but for the alleged error committed by his appellate counsel.

Petitioner next contends that his appellate counsel provided constitutionally deficient

assistance because he did not assert certain claims in the certiorari appeal.  None of these

claims have any merit, and counsel's omission of these claims does not constitute deficient

performance.

Petitioner asserts that his counsel should have argued that his plea was improperly

coerced.  As support for this omitted claim, Petitioner states that the plea proceeding itself was "coercive" and that the prosecutor coerced the plea by making an offer, which was a part of the plea agreement as clearly set forth in the Summary of Facts, that in exchange for Petitioner's plea the prosecutor would request that ODOC assign Petitioner to a correctional facility outside the State.  Petitioner included a copy of the letter from an Oklahoma County prosecutor requesting the Petitioner be confined in an out-of-state correctional facility for service of his sentences in Case No. CF-2006-7532. See Response, Ex. 10, at 12.  Petitioner is currently confined in a New Mexico prison, and thus this portion of the plea agreement was carried out. There is nothing improper about the atmosphere of the plea proceeding, the prosecutor's offer, or the resulting plea agreement provision that the prosecutor would request ODOC to assign Petitioner to an out-of-state correctional facility in exchange for his guilty plea.  The omitted claim has no merit.

Petitioner asserts that his appellate counsel should have argued that his plea was invalid because the district court did not advise Petitioner of his right to counsel at the plea proceeding or demonstrate on the record that Petitioner voluntarily waived his right to counsel.  The Sixth Amendment guarantees an accused the right to proceed without counsel. Faretta v. California, 422 U.S. 806, 819-820 (1975).  In Faretta, the Court recognized that a State may, even over the objection of the defendant, appoint a standby counsel to assist the defendant. Id. at 834 n. 46.  A waiver of the right to assistance of counsel is a relinquishment of "many of the traditional benefits associated with the right to counsel," and therefore the wavier must be knowingly made with an awareness of the "dangers and disadvantages of self-

representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Id. at 835.

The record in Petitioner's case, as summarized herein, shows that long before Petitioner's plea was entered Petitioner was clearly advised by the district court on multiple occasions of his right to counsel and of the "dangers and disadvantages" of proceeding *pro se*. The record further demonstrates that Petitioner voluntarily and knowingly waived his right to the assistance of counsel and elected to proceed without counsel.  As a precautionary measure, the district court appointed standby counsel and then appointed new standby counsel on two occasions when Petitioner complained about the assistance he was given by previously-appointed standby counsel.

Moreover, the Summary of Facts sets forth Petitioner's trial rights, including the right to the assistance of counsel. Response, Ex. 1, at 2; Original Record, Volume III, at 422. Petitioner affirmatively responded on the Summary of Facts that he understood the trial rights explained on the form, and he stated during the plea proceeding that he had reviewed the Summary of Facts with his standby counsel and that the answers on the form were true.

Petitioner asserts that he requested the assistance of counsel in motions filed May 19, 2009, and December 14, 2009.  In a Motion to Dismiss filed *pro se* by Petitioner in the case on May 19, 2009, Petitioner sought the dismissal of all charges due to the alleged violation of his speedy trial rights.  He did not request the appointment of counsel in this motion. Rather, he complained about the assistance provided him by the court-appointed standby counsel. Original Record, Volume II, at 235-254.  On December 14, 2009, Petitioner filed

22

a *pro se* Motion for Substitute Counsel or alternative Motion of Intent to Proceed Pro Se."
Original Record, Volume II, at 283-288.  In this Motion, Petitioner complained about the
assistance he had received from the second court-appointed standby counsel and requested
that Mr. Trevino be "dismissed" from the case.  Petitioner had been allowed to proceed *pro
se* long before this motion was filed, and the consequences of this decision were clearly and
thoroughly explained to Petitioner on multiple occasions.  Despite the clear advice Petitioner
had received in connection with his waiver of representation, Petitioner asserted in this motion
that his court-appointed standby counsel had failed to perform legal services traditionally
performed by defense counsel.  For instance, Petitioner argued that Mr. Trevino had "failed
to live up to" the standard of representation required of defense attorneys because he had
failed to file motions or prepare adequately for hearings.  See id. at 284-287.  In effect,
Petitioner wanted to have both the ability to proceed *pro se* AND the assistance of counsel,
a situation to which he was not entitled given his clear waiver of representation.

     Significantly, in a subsequent hearing conducted a month later in January 2010,
Petitioner appeared for a status conference before Judge Gray and Judge Gray stated that she
had appointed a third standby counsel, Mr. Gingrich, and had again advised Petitioner of the
disadvantages of proceeding *pro se*.  Original Record, Volume II, at 322-323.  During this
status conference, Judge Gray noted in her order that in granting Petitioner's request she had

> strongly urged Defendant to allow counsel to represent him.
> Defendant is intelligent, has his GED, and has previously had a
> jury trial in one of his cases.  He is articulate, appears to have a
> good grasp of his options and was well organized.  He also
> understands the range of punishment includes multiple life

> sentences in his eight count case, and that several counts are 85%
> crimes.  Defendant has been to prison several times, understands
> that he is at a serious disadvantage in proceeding *pro se*, but
> makes a knowing and voluntary decision to continue to represent
> himself against the advice of the Court.

Original Record, Volume II, at 322.   In light of the record showing Petitioner knowingly

waived his right to representation with full awareness of the significance and consequences

of the decision, the omitted claim, to-wit: that his plea was invalid because the district court

did not advise Petitioner of his right to counsel at the plea proceeding or demonstrate on the

record that Petitioner voluntarily waived his right to counsel, is meritless.

Petitioner contends that his appellate counsel should have argued that his plea was

invalid because he was not advised of the presumption of innocence.  However, the Summary

of Facts sets forth Petitioner's trial rights, including the right to be "presumed innocent of the

charges." Response, Ex. 1, at 2; Original Record, Volume III, at 422.  Petitioner affirmatively

responded on the Summary of Facts that he understood the trial rights explained on the form,

and he stated during the plea proceeding that he had reviewed the Summary of Facts and that

the answers on the form were true.   "The Due Process Clause of the Fourteenth Amendment

requires that a defendant knowingly and voluntarily enter a plea of guilty." Fields v. Gibson,

277 F.3d 1203, 1212-1213 (10th Cir.), cert. denied, 537 U.S. 1023 (2002).  The due process

requirements for a valid plea include a knowing and voluntary plea entered with a "full

understanding of what the plea connotes and of its consequence[s]." Boykin v. Alabama, 395

U.S. 238, 244 (1969). The record, including the plea transcript and the Summary of Facts,

demonstrates that Petitioner's plea was knowingly and voluntarily entered with a full

understanding of its consequences, including the waiver of the presumption of innocence. This omitted claim is meritless.

Petitioner contends that his appellate counsel should have argued that Petitioner was denied counsel at the hearing on the motion to withdraw the plea and the record does not show that he waived the assistance of counsel at the hearing.  As previously found, the record clearly demonstrates that Petitioner was advised of his right to counsel and the consequences of electing to proceed *pro se* on multiple occasions.  The record also demonstrates that Petitioner knowingly waived his right to counsel.  This omitted claim is meritless.

Petitioner contends that his appellate counsel should have argued that Petitioner's plea was invalid because the plea agreement "was breached when the State failed to provide the promised 'credit for time served.'" Petition, at 12b.  The Summary of Facts includes a detailed explanation of the terms of the plea agreement between Petitioner and the prosecution. Nowhere in this statement is there any provision with regard to sentence credit.  Petitioner stated on the Summary of Facts that he had not been promised anything other than the terms set forth in the plea agreement.  Response, Ex. 1, at 4; Original Record, Volume III, at 423. Petitioner stated in open court during the plea proceeding that the answers appearing on the Summary of Facts were true and that he was entering the plea voluntarily and without coercion. Plea Transcript, at 10-11.  Petitioner's assertion that the plea agreement contained an additional promise concerning "credit for time served" is contrary to the record and Petitioner's statements to the court at the time of the plea proceeding.  This omitted claim is meritless.

25

Petitioner has not demonstrated that his appellate counsel provided constitutionally deficient assistance.  Hence, Petitioner is not entitled to habeas relief concerning his claim in ground one.  Nor has Petitioner overcome the bar resulting from his state court procedural default.  Accordingly, Petitioner's procedural default bars federal habeas review of the claims asserted by Petitioner in grounds two through six of the Petition, and the Court should not review the merits of these claims.

VII. <u>Habeas Relief Not Available for Challenge to Sufficiency of Post-Conviction Rulings</u>

In ground seven, Petitioner asserts that he "denied a full and fair opportunity to present his claims in the state court system" because the district court and OCCA misinterpreted his ineffective assistance of appellate counsel claim presented in his post-conviction proceeding. Petition, at 12c.  A habeas petitioner's challenge to a state's "post-conviction procedures on their face and as applied to him . . . fail to state a federal constitutional claim cognizable in a federal habeas proceeding." <u>Steele v. Young</u>, 11 F.3d 1518, 1524 (10th Cir. 1993). Consequently, Petitioner's claim in ground seven does not present a cognizable federal habeas claim, and Petitioner is not entitled to habeas relief with respect to this claim.

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.  Plaintiff's Amended Motion for

Evidentiary Hearing and Request for Appointment of Counsel[3] (Doc. #25) and Motion to Appoint Counsel (Doc. #26) are DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by January   7th, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling.  Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   18th    day of   December   , 2012.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

---

[3]Petitioner requests an evidentiary hearing to explore certain issues raised in the Petition, including his ineffective assistance of appellate counsel, coercion, and breach of plea agreement claims.  Two of these claims are barred from habeas review due to Petitioner's state court procedural default.  The ineffective assistance of appellate counsel claim can be resolved based on the record itself.  Thus, Petitioner's request for an evidentiary hearing is denied.